IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PORTIA MCCLENDON as Administrator of the Estate of HASSAN GOLDEN<br><br>PLAINTIFF,<br><br>v.<br><br>CEMPLEX GROUP GEORGIA, LLC and JUSTIN WILLIAMS<br><br>DEFENDANTS. | CIVIL ACTION FILE NO.<br><br>JULY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Portia McClendon ("Ms. McClendon" or "Plaintiff") as Administrator of the Estate of Hassan Golden ("Mr. Golden") respectfully submits this Complaint for Damages and Equitable Relief and alleges as follows:

## INTRODUCTION

1. Mr. Golden was an African American male who was formerly employed by Cemplex Group Georgia, LLC, ("Cemplex") as a Pump and Bobcat Operator for a gypsum crew. Mr. Golden faced discrimination based on his race and color through discriminatory scheduling practices, abusive language, threats to fire

him, and wrongful termination. Mr. Golden complained to Cemplex's HR department about this treatment and was retaliated against for bringing that complaint. Defendant Justin Williams ("Mr. Williams") was Mr. Golden's supervisor and continually subjected Mr. Golden to discriminatory treatment.

2. Cemplex also shaved hours off of the time that Mr. Golden worked and did not compensate him for all the time that it required him to be on the jobsite.

3. Plaintiff files this Complaint for declaratory, injunctive, and monetary relief against Cemplex, Mr. Williams, and Mr. Dan for race and color discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("section 1981") and for unpaid wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

## JURISDICTION AND VENUE

4. The Court has federal-question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5. The violations of Plaintiff's rights occurred in the Northern District of Georgia. Venue for this action in the Northern District of Georgia under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions, and the unlawful actions and practices which give rise to Plaintiff's claims occurred in

## **PARTIES**

6. Plaintiff Portia McClendon is the Administrator of the Estate of Mr. Golden. She is Mr. Golden's mother.

7. Prior to his death, Mr. Golden was, at all times relevant to this action, a citizen of the United States entitled to bring actions of this type and nature and a resident of the state of Georgia.

8. Mr. Golden died on May 21, 2021. He died intestate.

9. Ms. McClendon filed a Petition for Letters of Administration on behalf of the estate of Mr. Golden on July 1, 2021.

10. On August 16, 3032, the Guardian ad Litem for Mr. Golden's minor heir consented to the Petition but required that a Determination of Heirs be filed.

11. On September 27, 2021, the Probate Court of Fulton County stayed the proceedings and required a Judicial Determination of Heirs be made.

12. The Probate Court of Fulton County lifted the stay on August 22, 2022, and on August 24, 2022, the Court granted the petition and appointed Ms. McClendon as Administrator of the estate of Mr. Golden.

13. Defendant Cemplex is a domestic limited liability company. Its principal office address is 3010 NW 149th St., Suite 100, Oklahoma City, OK 73134.

It was formed under the laws of the state of Georgia. Its registered agent for service of process is Business Filings Incorporated, 289 S. Culver St., Lawrenceville, GA 73134.

14. Defendant Justin Williams is a white male and at all relevant times was a Project Manager at Cemplex. At all relevant times, Mr. Golden reported to Mr. Williams. Mr. Williams is subject to the jurisdiction of this Court and may be served with process by personal service or by leaving copies of the summons and complaint at his dwelling house or usual place of abode with some person of suitable age and discretion residing there, or by delivering a copy of the summons and complaint to an agent authorized to receive service of process.

## **FACTUAL BACKGROUND**

15. Mr. Golden began working for Cemplex in August of 2016 as a Pump and Bobcat Operator for a gypsum crew. Mr. Golden left Cemplex's employ in November of 2018 but returned on October 1, 2019.

16. In early October of 2019, Cemplex hired Mr. Williams as Project Manager.

17. Shortly after Mr. Williams was hired, he randomly approached Mr. Golden at a job site and told him, "I will fire you at will." Mr. Golden replied that he was just trying to do his job and take care of his family.

-5-

18. Mr. Golden's mother had a health issue which sometimes required Mr. Golden to assist with her care. He also was a single father to his son. Mr. Golden intermittently required and requested schedule accommodations to care for his family.

19. Mr. Williams regularly required Mr. Golden and his crew to arrive at the job site at 5:30 a.m. despite the fact that Mr. Golden's official start time was 7 a.m.

20. When Mr. Golden informed Mr. Williams that he did not have childcare during these hours, Mr. Williams replied that he should "leave his son on the side of the road."

21. When Mr. Golden would request schedule accommodations to care for his mother, Mr. Williams stated that her issues were "not his fucking problem."

22. When white employees requested accommodation to care for family members, Mr. Williams expressed compassion and granted their requests without issue.

23. Mr. Williams also consistently cut Mr. Golden's hours and denied his time off requests with no explanation.

24. On many occasions, Cemplex also required Mr. Golden to stay at a job site while no work was able to be done while waiting for materials, for equipment

repairs, or other delays.

25. On one occasion around mid-February of 2020, Mr. Golden worked until 2:30 a.m. and was on the job site for around thirteen hours but was only paid for eight hours of work.

26. Mr. Williams also made discriminatory comments to Mr. Golden based on the mistaken belief that Mr. Golden was middle-eastern or Arabic.

27. For instance, Mr. Williams claimed that Mr. Golden had an Arabic tattoo on his chest.

28. When Mr. Golden and Mr. Williams were discussing unemployment benefits, Mr. Williams said that Mr. Golden's claim would be denied because he was not born in the United States.

29. Mr. Williams would also segregate the working crews into "black crews" and "Mexican crews." Mr. Williams would encourage the groups to compete against each other to show which crew could perform better.

### The December 10, 2019 Truck Accident

30. On December 10, 2019, Mr. Golden was unloading concrete at a high-rise apartment construction site. The site conditions were exceptionally muddy that day.

31. When another truck arrived at the site to unload a washing machine and

a dryer, the site's General Manager instructed Mr. Golden to allow the truck to unload before Mr. Golden proceeded.

32. However, Andre Spriggs, Mr. Golden's Crew Chief, and Craig Hunter, the site Supervisor, gave Mr. Golden instructions to keep working because he was "on the clock."

33. Mr. Golden expressed concern about not having adequate space to maneuver past a Sherwin Williams delivery truck that was parked nearby, but Mr. Hunter and Mr. Spriggs ignored these concerns.

34. Mr. Golden's concerns proved correct, and he accidentally scraped the Sherwin Williams truck's front bumper. The truck was unoccupied, but its driver was standing nearby and saw the accident. Mr. Golden and the driver exchanged contact and insurance information.

35. Mr. Golden immediately reported the accident to Mr. Hunter and Mr. Spriggs. Mr. Golden asked them whether he needed to take a drug test or take any other action. They dismissed his question and told him to get back to work.

36. Mr. Golden completed his work for the day and heard nothing further about the accident or any alleged protocol violations.

**Mr. Golden's Complaint to Human Resources**

37. In January of 2020, a crew of gypsum Pump Operators failed to wash

out a truck.

38. In that crew, there was one while male employee, Keegan Hendrix. The remaining members of that crew were black.

39. In response to their failure to wash out the truck, Mr. Williams fired the entire crew except for Mr. Hendrix.

40. The day after this incident, Mr. Williams threatened to fire Mr. Golden's gypsum crew which consisted of seven members, all of whom were black. Mr. Williams stated, "I just fired a whole black crew yesterday, and I can do it again today."

41. Sometime later, Mr. Golden complained to Tina Revell, who worked in Cemplex's Human Resources department, about Mr. Williams' discriminatory threats and treatment.

42. Mr. Golden spoke with Ms. Revell for about an hour and expressed his complaints about Mr. Williams' treatment. Mr. Golden specifically mentioned Mr. Williams' recent remarks about firing black crew members and his ability to do it again.

43. Mr. Golden also told Ms. Revel that he was being treated differently than his "similarly situated coworker Keegan Hendrix" because Mr. Hendrix was allowed to take time off to care for a family member and was not subjected to

harassment.

44. Mr. Golden also complained that Mr. Williams was targeting him and his crew.

45. As soon as HR notified Mr. Williams of Mr. Golden's complaint, Mr. Golden was called into a meeting with Mr. Williams and Dan Morgan, General Manager. At this meeting, they scolded Mr. Golden for breaking chain-of-command and reporting his grievances to HR.

46. When Mr. Golden pointed out the obvious conflict of reporting his harassment to his harasser, Mr. Williams and Mr. Morgan threatened to fire Mr. Golden is he ever spoke to "corporate" again.

## Mr. Golden's Unjustified Termination

47. On or about March 6, 2020, Cemplex terminated Mr. Golden.

48. Cemplex gave the reason for Mr. Golden's termination as failing to properly report to management that he was involved in an accident at a jobsite and failing to complete a drug screening following the accident.

49. Cemplex also gave as a reason for Mr. Golden's termination that he failed to report multiple accidents.

50. This concern that Cemplex had with Mr. Golden's alleged failure to report an accident was the first notice that Mr. Golden was ever given regarding any

work-related violation.

## COUNT I
## 42 U.S.C. § 1981 – RACE DISCRIMINATION - HOSTILE WORK ENVIRONMENT
*Against All Defendants*

51. Plaintiff incorporates by reference paragraphs one through 50 of this Complaint, as if they were fully set forth herein.

52. At all times material to this Complaint, Mr. Golden was employed by Cemplex and Mr. Williams was a Project Manager at Cemplex.

53. 42 U.S.C. § 1981 prohibits Defendants from discriminating against Mr. Golden on the basis of race with regard to his employment.

54. The above-pleaded discriminatory conduct toward Mr. Golden, including, but not limited to, cutting his hours, refusing his time off requests, demeaning and belittling remarks and treatment, racially segregating the crews that he worked on, forcing him to stay at a job site while no work was to be done, and threats of termination constitutes a hostile work environment which altered the terms and conditions of his employment in violation of 42 U.S.C. § 1981.

55. Defendants undertook their conduct intentionally and maliciously with respect to Mr. Golden and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Mr. Golden and his federally protected rights, entitling Mr. Golden to recover punitive damages against

Defendants.

56. Defendants' actions constitute unlawful intentional race discrimination in violation of 42 U.S.C. § 1981.

57. Defendants willfully and wantonly disregarded Mr. Golden's federally protected rights and Defendants' discrimination against Mr. Golden was undertaken in bad faith.

58. As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Mr. Golden suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

59. Accordingly, Plaintiff, as Administrator of Mr. Golden's Estate, is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendants' violation of Mr. Golden's rights under 42 U.S.C. § 1981.

## COUNT II
## 42 U.S.C. § 1981 – RACE DISCRIMINATION – WRONGFUL TERMINATION
*Against All Defendants*

60. Plaintiff incorporates by reference paragraphs one through 50 of this Complaint, as if they were fully set forth herein.

61. At all times material to this Complaint, Mr. Golden was employed by Cemplex.

62. 42 U.S.C. § 1981 prohibits Defendants from discriminating against Mr. Golden on the basis of race with regard to his employment.

63. The above-pleaded discriminatory conduct toward Mr. Golden in terminating his employment based on unjustified and untrue accusations which were intentionally designed to create a pretext for termination constitutes unlawful race discrimination against Mr. Golden in the terms and conditions of his employment in violation of 42 U.S.C. § 1981.

64. Defendants undertook their conduct intentionally and maliciously with respect to Mr. Golden and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Mr. Golden and his federally protected rights, entitling Plaintiff, as Administrator of Mr. Golden's Estate, to recover punitive damages against Defendants.

65. Defendants' actions constitute unlawful intentional race discrimination in violation of 42 U.S.C. § 1981.

66. Defendants willfully and wantonly disregarded Mr. Golden's federally protected rights and Defendants' discrimination against Mr. Golden was undertaken in bad faith.

67. As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Mr. Golden suffered damages including lost compensation and other

benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

68. Accordingly, Plaintiff, as Administrator of Mr. Golden's Estate, is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendants' violation of his rights under 42 U.S.C. § 1981.

## COUNT III
## TITLE VII – RACE AND COLOR DISCRIMINATION - HOSTILE WORK ENVIRONMENT
*Against Defendant Cemplex*

69. Plaintiff incorporates by reference paragraphs one through 50 of this Complaint, as if they were fully set forth herein.

70. At all times material to this Complaint, Mr. Golden was employed by Cemplex.

71. Title VII prohibits Cemplex from discriminating against Mr. Golden on the basis of race and color with regard to his employment.

72. The above-pleaded discriminatory conduct toward Mr. Golden, including, but not limited to, cutting his hours, refusing his time off requests, demeaning and belittling remarks and treatment, racially segregating the crews that he worked on, forcing him to stay at a job site while no work was to be done, and threats of termination constitutes a hostile work environment which altered the terms and conditions of his employment in violation of Title VII.

73. Complex undertook its conduct intentionally and maliciously with respect to Mr. Golden and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Mr. Golden and his federally protected rights, entitling Plaintiff, as Administrator of Mr. Golden's estate, to recover punitive damages against Complex.

74. Complex's actions constitute unlawful intentional race and color discrimination in violation of Title VII.

75. Complex willfully and wantonly disregarded Mr. Golden's federally protected rights and Complex's discrimination against Mr. Golden was undertaken in bad faith.

76. As a direct and proximate result of Complex's violations of Title VII, Mr. Golden suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

77. Accordingly, Plaintiff, as Administrator of Mr. Golden's Estate, is entitled to the equitable and monetary relief set forth in the following prayer for relief for Complex's violation of Mr. Golden's rights under Title VII.

**COUNT IV**
**TITLE VII – RACE AND COLOR DISCRIMINATION – WRONGFUL TERMINATION**
*Against Defendant Complex*

78. Plaintiff incorporates by reference paragraphs one through 50 of this Complaint, as if they were fully set forth herein.

79. At all times material to this Complaint, Mr. Golden was employed by Cemplex.

80. Title VII prohibits Defendants from discriminating against Mr. Golden on the basis of race and color with regard to his employment.

81. The above-pleaded discriminatory conduct toward Mr. Golden in terminating his employment based on unjustified and untrue accusations which were intentionally designed to create a pretext for termination constitutes unlawful race and color discrimination against Mr. Golden in the terms and conditions of his employment in violation of Title VII.

82. Cemplex undertook its conduct intentionally and maliciously with respect to Mr. Golden and his federally protected rights, or additionally, and in the alternative, undertook its conduct recklessly with respect to Mr. Golden and his federally protected rights, entitling Plaintiff, as administrator of Mr. Golden's estate, to recover punitive damages against Cemplex.

83. Cemplex's actions constitute unlawful intentional race and color discrimination in violation of Title VII.

84. Cemplex willfully and wantonly disregarded Mr. Golden's federally

protected rights and Cemplex's discrimination against Mr. Golden was undertaken in bad faith.

85. As a direct and proximate result of Cemplex's violations of Title VII, Mr. Golden suffered damages including lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

86. Accordingly, Plaintiff, as Administrator of Mr. Golden's Estate, is entitled to the equitable and monetary relief set forth in the following prayer for relief for Cemplex's violation of Mr. Golden rights under Title VII.

## COUNT V
## FLSA – UNPAID WAGES
*Against Defendant Cemplex*

87. Plaintiff incorporates by reference paragraphs one through 50 of this Complaint, as if they were fully set forth herein.

88. The FLSA required Cemplex to compensate Mr. Golden for all the time during which he was required to be on the job site.

89. The FLSA required Cemplex to pay Mr. Golden overtime for hours worked in excess of 40 hours in a workweek.

90. The above-pleaded conduct regarding requiring Mr. Golden to stay at a job site while awaiting delivery of materials, repairs of equipment, or other delays

and not paying him for that time constitutes a violation of the FLSA.

91. Cemplex knew that its conduct was prohibited by the FLSA, or additionally, and in the alternative, showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.

92. As a direct and proximate result of Cemplex's violations of the FLSA, Mr. Golden suffered damages in the form of lost and unpaid wages.

93. Accordingly, Plaintiff, as Administrator of Mr. Golden's Estate, is entitled to the relief set forth in the following prayer for relief for Cemplex's violation of Mr. Golden rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

(a) That a jury trial be had on all issues so triable;

(b) Back pay and benefits;

(c) Front pay and benefits;

(d) Lost wages;

(e) Compensatory damages;

(f) Punitive damages;

(g) Declaratory relief;

(h) Injunctive relief to prevent Defendants from engaging in such

discriminatory conduct in the future;

(i)   Costs incurred in bringing this action, including Plaintiff's and Mr. Golden's attorneys' fees;

(j)   Interest on all monetary awards; and

(k)   Such other and further relief the Court may deem appropriate.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 25th day of August, 2022.

        **BUCKLEY BEAL LLP**

By:   */s/ Joseph Quattlebaum*
      Edward D. Buckley
      Georgia Bar No. 092750
      edbuckley@buckleybeal.com
      Joseph Quattlebaum
      Georgia Bar No. 319971
      jquattlebaum@buckleybeal.com
      600 Peachtree Street NE
      Suite 3900
      Atlanta, GA  30308
      Telephone: (404) 781-1100
      Facsimile:  (404) 781-1101

*Attorneys for Plaintiff*